IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:13-CV-5

CHARLOTTE K. WEBB-SMITH,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant and
    Third-Party Plaintiff,

v.

LINDA H. WEBB,
    Third-Party Defendant.

ORDER

This matter is before the court on the United States' motion for summary judgment. (DE # 27.)

## I. BACKGROUND

On 11 January 2013, plaintiff Charlotte K. Webb-Smith ("Webb-Smith") commenced a claim of refund action against the Internal Revenue Service pursuant to 26 U.S.C. § 7422. (DE # 1.) Plaintiff seeks a refund for taxes paid and abatement of civil penalties assessed against her pursuant to 26 U.S.C. § 6672. The United States assessed civil penalties against Webb-Smith in the amount of $181,361.46 based on her involvement in the business of Webb's Tire and Auto Center, Inc. ("Webb's Tire"). (Id. ¶ 12.) Webb's Tire failed to account for employment taxes withheld from its employees' wages during various quarterly periods between 2003 and 2008. (DE # 1, ¶ 11.)

The United States filed an answer, counterclaim, and third-party complaint against Linda

H. Webb, the mother of Webb-Smith. (DE # 7.) In its counterclaim against Webb-Smith, the United States requests that the court enter judgment against Webb-Smith in the amount of $128,972. (Id. at 6.) The United States filed a motion for summary judgment on 6 June 2014 against Webb-Smith. (DE # 27.) Webb-Smith filed a memorandum in opposition to the motion. (DE # 29.) The United States then filed a reply in support of its motion. (DE # 31.)

## II. DISCUSSION

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248.

Pursuant to federal law, employers must withhold income and social security taxes from employee wages. 26 U.S.C. §§ 3102, 3402. An employer holds the withheld amounts in trust for the United States. 26 U.S.C. § 7501(a). These taxes are commonly referred to as "trust fund taxes." See Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010). Title 26, United States Code, Section 6672 imposes liability for failure to remit trust fund taxes to the United States. The statute states, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Id. Thus, an individual will be personally liable for unpaid taxes if (1) the individual was "responsible" for collection and payment of trust fund taxes; and (2) the "responsible person" acted "willfully" in his or her failure to comply with the statute. Erwin, 591 F.3d at 319; see also Johnson v. United States, 734 F.3d 352, 359 (4th Cir. 2013). "Once the Government assesses a taxpayer for this liability, the taxpayer has the burden of proof at trial on both elements of § 6672 liability." Erwin, 591 F.3d at 319.

In determining "responsible person" status, the "crucial inquiry is whether the person had the 'effective power' to pay the taxes — that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Plett v. United States, 185 F.3d 216, 219 (4th Cir. 1999) (internal citations omitted). More than one person in a corporation may be deemed a "responsible party." Erwin, 591 F.3d at 320. A person's title alone is insufficient to establish her as a "responsible party." O'Connor v. United States, 956 F.2d 48, 51 (4th Cir. 1992). Rather, courts must focus on the substance of the person's duties.

3

Id. As the Fourth Circuit has stated:

> The key element . . . is whether that person has the statutorily imposed duty to make the tax payments. This duty is considered in light of the person's authority over an enterprise's finances or general decision making. This authority is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursement of funds. . . . The substance of the circumstances must be such that the officer exercises and uses his authority over financial affairs or general management, or is under a duty to do so, before that officer can be deemed to be a responsible person.

Id. (internal citations omitted). While *exclusive* control over a corporation's finances is not necessary, a person must have *significant* control in order to be deemed a "responsible person." Erwin, 591 F.3d at 321.

Courts have developed a non-exhaustive list of factors that assist in determining whether a person possessed the requisite authority to be considered a "responsible person." Id. Factors to consider include whether the employee (1) served as an officer of the company; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees. Id.; see also Plett, 185 F.3d at 219; O'Connor, 956 F.2d at 51. No one factor is determinative, and the court will consider the totality of the circumstances. Erwin, 591 F.3d at 321. Summary judgment may be appropriate when there is no genuine dispute of material fact as to most of the factors. Id. (affirming the district court's granting of summary judgment for the United States where not every factor indicated the individual was a "responsible party," but most factors so indicated).

When considering these factors, courts "undertake a 'pragmatic, substance-over-form inquiry' focused on the person's status, duty, and authority within the corporation." Johnson,

4

734 F.3d at 361 (quoting Plett, 185 F.3d at 219). The statute "is not meant to ensnare those who have merely technical authority . . . ." Fiataruolo v. United States., 8 F.3d 930, 939 (2d Cir. 1993). When a taxpayer claims that her actual authority was less than her technical authority, she bears the burden of showing such limitation on authority. United States v. Landau, 155 F.3d 93, 103 (2d Cir. 1998); see also Lyon v. United States, 68 F. App'x 461, 468 (4th Cir. 2003) (unpublished) (per curium) (noting that the taxpayer has the burden of showing that actual authority is less than technical authority); Miller v. United States, 2014 WL 2925290, at *3 (E.D. Va. 2014) (stating that the taxpayer retains the burden of showing a limitation on technical authority). However, if a taxpayer possesses *actual* authority to exercise significant control, she may be a "responsible person" even if she did not in fact exercise such control. Johnson, 724 F.3d at 362. If the taxpayer does not raise "a genuine dispute of material fact on the issue, [the court] may 'conclude that the documentary evidence of authority reflects the reality.'" Lyon, 68 F. App'x at 468 (quoting Landau, 155 F.3d at 103).

Despite the fact-intensive inquiry necessary to determine liability under 26 U.S.C. § 6672, courts consistently hold that taxpayer liability may be determined as a matter of law in the absence of disputed material facts. See, e.g., Erwin, 591 F.3d at 320 (citing Barnett v. IRS, 988 F.2d 1449, 1454 (5th Cir. 1993)). "[T]o defeat summary judgment, the taxpayer (like any other litigant) must identify . . . a genuine issue of material fact . . . ." Erwin, 591 F.3d at 319; see also United States v. Rem, 38 F.3d 634, 645 (2d Cir. 1994) (reversing the district court's granting of summary judgment where there existed genuine questions of fact as to whether the individual "had significant control over [the company's] finances," despite holding corporate office, possessing some level of check-signing authority, and conducting credit negotiations for the

5

company); Hudak v. United States, 2013 WL 3776310, at *3 (D. Md. 2013) (declining to find "responsible party" status as a matter of law where the evidence showed that the individual, the president and sole owner of the company, delegated responsibility for tax compliance to another, did not make decisions as to which creditors to pay, and only signed checks in a perfunctory manner); Seufert v. United States, 1990 WL 63060, at *3-4 (M.D.N.C. 1990) (denying the government's motion for summary judgment where the individual produced evidence "suggest[ing] that his corporate status and check signing ability did not carry with it the corresponding power to direct the fiscal affairs of [the company]."); Merrill v. United States, 642 F. Supp. 1163, 1166-67 (W.D.N.C. 1986) (finding that genuine issues of fact as to "responsible party" status existed, although the individual had the power to hire and fire employees, possessed check-signing authority, owned stock in the company, provided a signature for obtaining a loan for the company, and signed a quarterly tax return).

The United States argues "that there is no genuine dispute of material facts with respect to four of [the six] factors" outlined above. (DE # 31, at 2.) Pointing to the same factors, Webb-Smith argues that the question of whether she possessed significant authority over the corporate finances is in dispute and should be submitted to a jury. (DE # 29, at 2, 7-8.) The court will consider each factor in turn.

**1. Serving as a corporate officer**

It is undisputed that Webb-Smith was a founding officer of Webb's Tire and agreed to act as Treasurer beginning on 19 March 2003, the date of incorporation. (Pl.'s Dep., DE # 27-2, at 28:1-15; 29:16-19; DE # 29-2, at 33:15-19.) Moses Webb ("Mr. Webb"), Webb-Smith's father, was the sole shareholder of the corporation. (Pl.'s Dep., DE # 29-2, at 140:5-11.) Webb-Smith

6

Case 4:13-cv-00005-BR   Document 32   Filed 09/02/14   Page 6 of 13

agreed to serve as Treasurer at the request of her father. (Id. at 29:16-19.) In December of 2004, Webb-Smith resigned as Treasurer because she had a separate, full-time job that required substantial out-of-state travel. (Id. at 33:15-25.) After her resignation, however, she continued to assist her father's business by calculating payroll, preparing and signing tax returns, and writing checks to creditors at the direction of her father. (Id. at 35:6-12; DE # 27-2, at 70:2-71:3.)

In considering the corporate title factor, the Fourth Circuit reversed the district court's granting of summary judgment where the individual came forward with evidence to show that, despite his title of corporate vice president, "he did not perform duties an officer might perform nor did he exercise any authority that his status as . . . vice president may have bestowed upon him." O'Connor, 956 F.2d at 51. The Second Circuit has echoed this reasoning, noting that an individual may possess a corporate title "in circumstances where the individual in reality does not possess significant control over corporate finances." Rem, 38 F.3d at 647.

The government argues that Webb-Smith's title as Treasurer "speaks powerfully to her role within the business." (DE # 31, at 2.) Webb-Smith disputes this contention, stating that "[her] duties never included those of a corporate treasurer," despite her title. (DE # 29, at 3.) Webb-Smith characterizes her role as more akin to a bookkeeper than a corporate treasurer, (Pl.'s Dep., DE # 29-2, at 30:23-31:4), which her mother, Linda Webb, corroborates, (Linda Webb Dep., DE # 29-3, at 10:14-20).

There is no dispute that between March of 2003 and December of 2004 Webb-Smith possessed the title of Treasurer of Webb's Tire. However, Webb-Smith points to evidence which gives rise to a genuine dispute as to whether she actually carried out the duties and

7

possessed the authority of a corporate treasurer. All of her actions, such as calculating Webb's Tire's payroll, preparing and signing tax returns, and writing checks to pay the bills, were taken at the direction of her father who, according to Webb-Smith, controlled access to the company checkbook. (Pl.'s Dep., DE # 29-2, at 35:6-12; 54:9-22; DE # 27-3, at 70:2-71:3.) Webb-Smith did not write checks or file tax returns on behalf of Webb's Tire without her father's permission. (Pl.'s Dep., DE # 29-2, at 34:15-17; 95:13-20.) He would tell her "what [checks] to write and how much to write [them] for." (Linda Webb Dep., DE # 29-3, at 13:17-18.) Additionally, she had no office at Webb's Tire and was away from North Carolina for substantial periods of time during the time frame in question. (Pl.'s Dep., DE # 29-2, at 24:1-15; 31:5-10.) Based on these facts, a reasonable jury could find that while Webb-Smith possessed the title of Treasurer, in practice she neither carried out the duties nor possessed the authority of a corporate treasurer.

**2. Control of the corporation's payroll**

The government argues that because Webb-Smith was "given responsibility for calculating the company's payroll, issuing payroll checks, and preparing and signing payroll tax returns," there is no dispute as to this factor. (DE # 28, at 14.) Webb-Smith counters that performing payroll calculations at the direction of her father and acting as bookkeeper are insufficient facts to establish that she had control of Webb's Tire's payroll. (DE # 29, at 7.)

There is no consensus among district courts in the Fourth Circuit as to what constitutes control over payroll. In Miller, the district court briefly addressed this factor by noting that a person who prepared and signed payroll checks did indeed possess substantial authority over payroll. 2014 WL 2925290, at *4. In contrast, the court in Secret v. United States found that the party did not control the company's payroll where that person merely processed the payroll, but

8

had no say in determining work schedules or pay rates for employees. 373 F. Supp. 2d 619, 626 (N.D. W. Va. 2005); cf. In re Sheppard, 253 B.R. 397, 404 (Bankr. D.S.C. 2000) (finding a person had control over the company's payroll where he was responsible for determining the salaries of employees).

Again, while Webb-Smith prepared the company's payroll and signed payroll checks, (Pl.'s Dep., DE # 27-2, at 39:6-8; 104:9-18), this was done at the request and direction of her father, often while she was working full-time out-of-state, (id. at 39:3-40:5). Employee salary was determined by Mr. Webb, (Pl.'s Dep., DE # 29-2, at 38:14-16), and he was in charge of making sure payroll taxes were paid, (id. at 40:12-21). Webb-Smith's lack of control over the payroll is supported by her testimony that she did not learn that the company had failed to remit trust fund taxes until 2006. (Id. at 43:5-10.) In light of these facts, the court finds that there is a genuine dispute as to whether Webb-Smith had control of the company's payroll.

**3. Determination of which creditors to pay and when to pay them**

The government argues that Webb-Smith "had the ability to determine which creditors to pay because she had access to the company's checkbook and had full check-signing authority on the company's account." (DE # 28, at 14.) Webb-Smith contends that because she "was only allowed to write checks for bills that were [pre-authorized] by her father," she had no authority to determine which creditors to pay. (DE # 29, at 7.)

In O'Connor, the Fourth Circuit found that this factor was not satisfied where an individual had the technical power to write checks, but never "made decisions regarding which bills to pay and which to postpone." 956 F.3d at 50-51. In comparison, in Erwin, this factor was satisfied where the individual actually determined which creditors to pay and when to pay them

9

by negotiating payment plans and directing corporate funds to specific creditors. 591 F.3d at 322.

Webb-Smith possessed full check-signing authority, as no co-signor was required. (Pl.'s Dep., DE # 29-2, at 34:15-25.) Whether Webb-Smith had access to the checkbook is in dispute. She testified that her father kept the checkbook in a locked desk drawer to which he alone possessed the key, (id. at 54:9-22), while her mother stated that the checkbook was not kept in a locked desk drawer, (Linda Webb Dep., DE # 27-3, at 12:8-21). Even assuming Webb-Smith had access to the checkbook, that fact combined with her full check-signing authority is insufficient to show there is no dispute as to whether she determined which creditors to pay and when to pay them. Webb-Smith testified that her father would tell her what specific bills to pay and that she never questioned his decision or offered advice on the issue. (Pl.'s Dep., DE # 29-2, at 56:8-57:4.) Beginning in 2006, Webb-Smith loaned the company between $130,000 and $150,000 dollars with the intention that the money be used to pay the Internal Revenue Service. (Id. at 45:16-46:13.) Mr. Webb, however, directed that money elsewhere. (Id. at 50:12-21.) Webb-Smith testified that her father "was the only person that could authorize anything at [Webb's Tire]." (Id. at 40:20-21.) Although Webb-Smith may have possessed the technical authority to pay Webb's Tire's creditors due to her check-signing authority, she has come forth with sufficient facts to create a genuine dispute as to whether she had actual authority to do so.

**4. Possessing the power to write checks**

The government argues that "it is undisputed that Webb-Smith had the power to write company checks." (DE # 31, at 3.) As with several of the other factors, Webb-Smith admits this technical authority existed, but argues that her actual authority was circumscribed by Mr.

10

Webb's control over the process. (DE # 29, at 8.)

      While the power to sign checks is an important factor in the "responsible person" inquiry, the power "can exist in circumstances where the individual in reality does not possess significant control over corporate finances." Rem, 38 F.3d at 647. "The mechanical dut[y] of signing checks . . . [is] not determinative of liability under § 6672." Godfrey v. United States, 748 F.2d 1568, 1575 (Fed. Cir. 1984) (cited approvingly in O'Connor, 956 F.2d at 51). In O'Connor, the Fourth Circuit found that where the individual possessed the technical authority to write checks but never exercised the power, this factor favored a finding that the individual was not a "responsible person." 956 F.2d at 51. In Johnson, the individual possessed the power to write checks, but chose not to do so without the prior approval of her husband. 734 F.3d at 362-63. At some point, she ceased following this procedure, and began writing checks without the approval of her husband. Id. at 363. The Fourth Circuit stated that "the fact that Mrs. Johnson previously chose not to write checks without Mr. Johnson's approval does not show that she was prevented earlier from doing so other than by her own choice." Id.

      As recognized earlier, Webb-Smith had the authority to write company checks with no co-signor requirement, and she in-fact exercised that authority. (Pl.'s Dep., DE # 29-2, at 34:15-25.) Thus, her signature alone would be sufficient for the bank to cash a check. (Id. at 34:23-25.) However, she was only allowed to write company checks with the permission and at the direction of her father, who, according to Webb-Smith, maintained the checkbook under lock and key. (Id. at 34:15-17; 54:13-22.) Even though she admits that she could have made payments without her father's permission, as there was no co-signor requirement, (id. at 119:3-120:5), viewing the facts in the light most favorable to Webb-Smith, a genuine dispute exists as

11

to whether Webb-Smith had actual authority to write checks, or whether Mr. Webb exerted such control over the process as to divest her of any meaningful authority.

### 5. The ability to hire and fire employees

The government argues that, based on Linda Webb's testimony, there is no dispute that Webb-Smith had authority to hire and fire employees. (DE # 31, at 3.) Webb-Smith maintains that she had no such authority. (DE # 29, at 3.)

When asked if Webb-Smith had the ability to hire or fire employees, Linda Webb stated, "She had the authority, but she never did." (Linda Webb Dep., DE # 29-3, at 29:16-18.) In outlining Mr. Webb's duties, Webb-Smith testified that "[h]e hired all of the employees . . . [and] fired any employees." (Pl.'s Dep., DE # 29-2, at 30:6-13.) She stated that she had no role in hiring and firing at Webb's Tire at any point. (Id. at 38:6-8.)

Although Webb-Smith did not testify explicitly that she lacked ability to make hiring and firing decisions, her testimony gives rise to a reasonable inference that she lacked such ability. The facts establish the existence of a genuine dispute as to whether she possessed the ability to hire and fire employees.

### 6. Participation in the company's day-to-day management

The government does not contend that Webb-Smith participated in the daily management of Webb's Tire. Webb-Smith testified that she was working full-time out-of-state during most of the time period in question. (Pl.'s Dep., DE # 29-2, at 33:20-25.) Webb-Smith never had an office or even a designated workspace at Webb's Tire. (Id. at 31:5-10.) While Webb-Smith performed several tasks for Webb's Tire between 2004 and 2008, the record shows no evidence that she was involved in the company's day-to-day management, and therefore, this factor favors

12

a finding that Webb-Smith was not a responsible person within the meaning of § 6672.

### III. CONCLUSION

Based on the foregoing, the record presents genuine questions as to the amount of actual, substantive authority that Webb-Smith possessed over the control of company finances and the scope of her decision-making authority, and thus, whether she was a responsible person within the meaning of § 6672.[1] Accordingly, the United States' motion for summary judgment is DENIED.

Trial is currently set for 29 September 2014. The court's docket reflects that the case is set for a bench trial. In her complaint, Webb-Smith requests a jury trial. As such, this request will be honored. See 28 U.S.C. § 1346(a)(1) (vesting district courts with original jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ."); § 2402 (providing for a jury trial in § 1346(a)(1) actions at the request of either party).

This 2 September 2014.

                                          W. Earl Britt
                                          Senior U.S. District Judge

---

[1] Because the court finds that there exists a genuine dispute of material fact as to whether Webb-Smith was a "responsible party," the court need not address whether her actions were "willful" within the meaning of § 6672.